# HOME TELEPHONE COMPANY v. NORTH MANCHESTER TELEPHONE COMPANY.

[No. 6,430. Filed October 4, 1910. Rehearing denied December 16, 1910. Transfer denied April 7, 1911.]

1. TELEGRAPHS AND TELEPHONES.—*Carriers.*—*Duties.*—Public telephone companies are common carriers, and must treat all customers impartially. p. 418.

2. TELEGRAPHS AND TELEPHONES.—*Contracts.*—*Monopolies.*—A contract, made by local telephone companies for the construction of a competitive long-distance line, obligating defendant telephone company to transmit, over plaintiff telephone company's lines, all telephone messages originating on defendant's lines and which are to be transmitted to points on plaintiff's lines, but not preventing defendant from connecting with other companies' lines,

is not invalid, where the public is as well served by plaintiff as by the other companies, and where plaintiff was compelled to expend a large sum in order to care for such business. pp. 418, 421, 423.

3. TELEGRAPHS AND TELEPHONES.—*Contracts.*—*Public Rights.*— Telephone companies cannot contract in disregard of the convenience of the public, or to deprive the public of the best and least expensive service. p. 420.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Suit by the North Manchester Telephone Company against the Home Telephone Company. From a decree for plaintiff, defendant appeals. *Affirmed.*

*Sayre & Hunter,* for appellant.
*R. J. Loveland* and *James D. Conner, Jr.,* for appellee.

HADLEY, J.—Appellee sued appellant for an injunction and for damages. There was a trial by the court, and special findings and conclusions thereon made. The special findings show that appellee telephone company was organized under the laws of the State of Indiana, and is operating a public telephone system with its principal office at North Manchester, Indiana; that as such telephone company it maintained a telephone exchange at North Manchester, which was in immediate telephonic connection, fully equipped, and ready and willing to do a general telephone business to and from and in the counties of Wabash, Fulton, Kosciusko and Whitley, and to numerous towns and exchange points in said counties; that said connections were either owned by said appellee, or owned by other companies with which said appellee had direct connections; that appellant is a telephone company organized under the laws of the State of Indiana, operating a public telephone system, with its principal place of business in the city of Wabash, Indiana; that at the same time the Central Union Telephone Company, a telephone company of great magnitude, with lines and service ramifying all parts of the country, with a vast income, and with an aggressive disposition to extend its system and

NOVEMBER TERM, 1910. 413

Home Tel. Co. v. North Manchester Tel. Co.—47 Ind. App. 411.

business, was operating its system throughout the territory occupied by appellee and appellant; that prior to the entrance of appellee and appellant into said field said Central Union Telephone Company was without competition; that to make certain the continuance of the existence of said appellee and appellant, and for the purpose of bettering and cheapening telephone service to the public, and of enlarging said service in order to furnish the general public with all needful facilities for cheap and quick telephone service, said appellee and appellant entered into negotiations for a contract of service between them; that before appellant would enter into such an agreement with appellee, appellant required that appellee replace native poles strung with a single wire, which appellee then maintained between the towns of North Manchster and Wabash, with cedar poles and a double-circuit wire; that it also required appellee to put in a metallic switchboard at its exchange at North Manchester, rebuild and extend its main line in the town of North Manchester, construct a new switchboard and add additional equipments in its exchange at North Manchester; that appellee, to meet these requirements, did replace the poles, string the double-circuit wire, put in a new switchboard and extend its lines, and in doing so expended the sum of $5,250; that said expenditure was made as a part of the consideration of the contract thereafter entered into with appellant; that after said improvement of said lines and exchange of said appellee, on July 20, 1901, appellant entered into a contract with appellee, whereby it was agreed, each with the other, "to deliver each to the other all toll-line business that each may have for all points on the lines of the other, or on lines on which the other may be connected at such points of junction to which the lines of the parties hereto may be constructed or extended, or at such point or points on the lines of other companies, corporations or individuals with which the lines of the parties hereto may be connected."

The contract further provided the percentage of compen-

414     APPELLATE COURT OF INDIANA,

Home Tel. Co. *v.* North Manchester Tel. Co.—47 Ind. App. 411.

sation that each of said lines should receive on said business; and also that monthly statements should be made of such business, and that each party, upon application, should have access to the books of the other party. The findings show that it was essential to the existence of appellant and appellee that they enter into said contract at the time they did, and that no injury or wrong was done or has been done to the public by reason of their entering into said contract and the operation of their respective telephone systems thereunder. The court further found that the Eel River Telephone Company is a corporation duly organized under the laws of the State of Indiana, and operates a public telephone system, with its principal office at North Manchester, Indiana, and that the Commercial Telephone Company is a corporation duly organized under the laws of the State of Indiana, and operates a public telephone system with its principal office at Warsaw; that said Commercial Telephone Company owned and operated a general telephone line from Warsaw to Wabash; that the line of said Eel River Telephone Company connects with the line of said Commercial Telephone Company, five miles west of North Manchester and ten miles north of Wabash; that said Commercial Telephone Company, by means of this connection operates a telephone line from Warsaw by way of North Manchester to Wabash; that on November 18, 1902, said Commercial Telephone Company and appellant entered into a contract, whereby said Commercial Telephone Company was permitted to connect with the switchboard of appellant company, and said appellant company agreed to transmit all messages "originating on any of its stations or exchanges, or passing through its switchboard, destined for points reached by or accessible through the lines of said first party [Commercial Telephone Company] by way of the line of said first party, unless a nearer route is otherwise available;" that said last-mentioned contract was entered into by appellant for the purpose of aiding it in violating its said contract with appellee;

NOVEMBER TERM, 1910. 415

Home Tel. Co. *v.* North Manchester Tel. Co.—47 Ind. App. 411.

that thereafter, on November 24, 1902, the Eel River Telephone Company executed and delivered to appellant an indemnifying bond, whereby it indemnified said appellant against any costs or expenses incurred in defending suits or damages adjudged against it for the violation of appellant's contract with appellee; that for some time previous thereto, and ever since the execution of said contract and bond, said appellant, in direct violation of its contract with appellee, has been transmitting its toll-line business received at its office in Wabash over and through the lines of the Commercial Telephone Company and the Eel River Telephone Company to patrons of appellee; that the contract and bond made by appellant with the Commercial Telephone Company and the Eel River Telephone Company was made for the purpose of enabling appellant to violate its contract with appellee; that since said Eel River Telephone Company's lines were connected with the Commercial Telephone Company's lines, appellant has transmitted its business over the lines of said Commercial Telephone Company and said Eel River Telephone Company to patrons in the town of North Manchester, who had, at the time, a telephone and who could be reached over the lines of appellee company without any messenger service, or any inconvenience of any kind to said patrons; that said appellant company has transmitted messages to North Manchester by way of the lines of the Commercial Telephone Company and the Eel River Telephone Company, in violation of its contract with appellee company, by delivering messages to persons within the city of North Manchester where said persons were required to go to the Eel River Telephone Company exchange for service, walking a distance so to do, and at the time of the delivery of said messages said persons were patrons of the North Manchester Telephone Company, and in direct communication with said North Manchester Telephone Company; that said appellant is now violating said contract, by delivering its toll-line business originating in Wabash, Indiana, and at points beyond

Wabash, Indiana, to the Commercial Telephone Company and Eel River Telephone Company; that this delivery of business was voluntarily done on the part of appellant company; that said violations of said contract have decreased the patronage and business of appellee company, to its injury and damage, and have caused it to suffer great financial loss; that appellant company failed and refused to deliver its toll-line business to appellee company, because of its contract with said Commercial Telephone Company, and not because of a demand by its patrons; that appellee company has, since the execution of said contract, at all times complied with its terms, and has at all times been ready and willing, and so informed appellant company of its willingness and readiness, to comply with said terms and provisions of said contract; that appellee company, both orally and in writing, has repeatedly demanded of appellant company a full compliance with said contract, which demands have in each case been refused; that the plant and equipment of appellee company, at all times since the execution of said contract, have been sufficient properly to carry and deliver all toll-line business in compliance with its contract; that said plant and system of appellee company are first-class; that appellant company has refused to make monthly statements, has destroyed its records, has refused access to its books and papers, and by its acts and conduct endeavored to prevent appellee company from knowing the amount of toll-line business transmitted from its home office in Wabash over the lines of the Commercial Telephone Company and the Eel River Telephone Company; that by reason of the destruction of the records of appellant company, appellee company is prevented from ascertaining the amount of said toll-line business; that the absence of said records prevents it from ascertaining the exact amount of damages it may sustain from time to time by reason of the violation of said contract, and that full compensation therefor cannot be afforded appellee in the suits for damages for breaches of said con-

NOVEMBER TERM, 1910. 417

Home Tel. Co. *v.* North Manchester Tel. Co.—47 Ind. App. 411.

tract; that the injury it thus sustains is a continuing injury, and would require a multiplicity of suits to secure compensation therefor; that appellee company will continue to violate said contract unless prevented by an order of court; that said appellee company has frequently used the lines of the Commercial Telephone Company and the Eel River Telephone Company to send messages to North Manchester during the existence of said contract, when said appellee company knew at the time of such transmission that appellee company had a telephone in the place of business or residence of the person to whom the messages were directed, and said appellant company refused to transmit said messages over the lines of appellee company, and caused said persons to whom said messages were directed to leave their residences or business places and go to the exchange and pay messenger fees in order to receive said messages; that after the execution of the contract between appellant and appellee no complaint of any kind was made by the public or by any of the patrons of either of said companies as to the connection or character of service that appellee company was rendering, but said service was wholly satisfactory to the public and its patrons.

Upon the foregoing facts the court stated as its conclusions of law that the law was with appellee; that it was entitled to recover damages in the sum of $150, and that appellee was entitled to have a perpetual injunction against appellant's violation of the terms of said contract. Upon these conclusions the court rendered judgment in favor of appellee, and against appellant in the sum of $150, and enjoined it from transmitting telephonic messages or business over the lines of said Commercial Telephone Company and said Eel River Telephone Company, or other lines and exchanges of other telephone companies except appellee telephone company, when said messages were to parties having direct telephone connection with appellee's lines or its connecting lines.

418    APPELLATE COURT OF INDIANA,

Home Tel. Co. *v.* North Manchester Tel. Co.—47 Ind. App. 411.

The vital question in this case, presented in various ways, is whether the provisions of the contract between appellant and appellee, whereby it is stipulated that appellant shall give appellee all toll business originating in Wabash and points outside, coming through appellant's exchange, and directed to points on appellee's lines, constitute a valid and binding obligation.

Public telephone lines are common carriers in this State. *Hockett* v. *State* (1886), 105 Ind. 250, 55 Am. Rep. 201; *State, ex rel.,* v. *Cadwallader* (1909), 172 Ind. 619.

1. By statute they are compelled to supply all applicants, within local limits, with telephone connections and facilities, without discrimination or partiality, provided such applicants comply with the reasonable rules and regulations of said company. §5802 Burns 1908, Acts 1885 p. 151, §2.

The contract herein does not provide against the making of connections with appellant's switchboard by other companies, or the receipt of messages therefrom, and

2. therefore it cannot be said that it was a violation of the agreement to permit the Commercial Telephone Company to connect therewith, and thereby transmit messages to appellant. The contract does, however, provide that all the toll business originating in or through appellant company, for transmission to points on appellee's lines, shall be given to appellee. It is admitted that this is the contract. It is found as a fact, and is undenied, that appellant has continuously violated this agreement since November, 1902. It is found as a fact, and is undenied, that appellee expended $5,250 on the faith of this agreement, and that the violation of the agreement greatly depreciates the earning power and value of appellee's property.

If this provision of the contract is invalid, it must be because it tends to create a monopoly, is in restraint of trade and against public policy. But the rule is that all contracts in restraint of trade are not necessarly invalid, where such

restraint is only partial, incidental or minor to the main object sought to be obtained, which is for the public good. *United States* v. *Addyston Pipe, etc., Co.* (1898), 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122; *Wayne-Monroe Tel. Co.* v. *Ontario Tel. Co.* (1908), 112 N. Y. Supp. 424, 60 Misc. 435.

In *United States* v. *Addyston Pipe, etc., Co., supra,* Judge Taft expresses the measure of this rule as follows: "This very statement of the rule implies that the contract must be one in which there is a main purpose, to which the covenant in restraint of trade is merely ancillary. The covenant is inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may suffer from the unrestrained competition of the other. The main purpose of the contract suggests the measure of protection needed, and furnishes a sufficiently uniform standard by which the validity of such restraints may be judicially determined. In such a case, if the restraint exceeds the necessity presented by the main purpose of the contract, it is void for two reasons: First, because it oppresses the covenantor, without any corresponding benefit to the covenantee; and, second, because it tends to a monopoly. But where the sole object of both parties in making the contract as expressed therein is merely to restrain competition, and enhance or maintain prices, it would seem that there was nothing to justify or excuse the restraint, that it would necessarily have a tendency to monopoly, and therefore would be void."

In *Wayne-Monroe Tel. Co.* v. *Ontario Tel. Co., supra,* a contract had been entered into between two telephone companies for the extension of their facilities, precisely as in this case. As here, the contract contained an agreement for exclusive toll business. It also contained a covenant that neither company would enter the territory of the other. Upon violation of these terms of the contract by one of the parties, specific performance of the contract was sought by

the other. The same defense was set up there as here. In considering this phase of the controversy, the appellate division of the supreme court of New York, through Sutherland, J., said: "The agreement does restrain each party from becoming a business rival of the other during the life of the contract; but that restraint is only incidental and contributory to the attainment of the main object of the agreement, namely, an extension of the business of each party through the connection of their two systems. Clauses eight and eleven only afford to each the security which is reasonable and necessary for the faithful performance of the obligations of agency assumed by the other, and to protect each against the improper use of the knowledge and instrumentalities placed in the hands of the other by virtue of the contract. Such a partial and minor restraint of trade, remote in application and agreed to in order to bring about an immediate and relatively larger extension of trade in other respects, with an improvement of facilities for the public convenience, is not condemned by the statutes nor by the common law, as now interpreted and applied by the courts."

It is found by the court that the contract in question was entered into for the purpose of establishing a competitive long-distance telephone system in the localities reached; that such a mutual agreement was essential to the existence of such a system. The main purpose of the combination was therefore not to restrain trade, but to extend it, the restraint, in effect, being only incidental and minor. However, under the judgment in this case, we may concede, without deciding, that so far as appellee seeks to 3. enforce this provision of the contract, without regard to the convenience to the public, it must fail; and may also concede the rule to be that the public is entitled to the best, most convenient and least expensive service available, and that appellant cannot be compelled to comply with the terms of its agreement with appellee, in violation of this public right. It yet remains clear that appellant should not

NOVEMBER TERM, 1910.          421

Home Tel. Co. v. North Manchester Tel. Co.—47 Ind. App. 411.

be permitted to disregard the terms of this contract, when such disregard does not involve a violation of this public right.

It is shown by the findings and is unquestioned that appellant has been sending, and is continuing to send, messages to persons in North Manchester over the lines of 2. the Commercial Telephone Company and of the Eel River Telephone Company to persons not patrons of either of said lines, but who were and are patrons of appellee, and who had telephones connected with said appellee's lines in their residences or places of business, and who were thereby compelled to go to the exchange or public stations of the Eel river line to answer such calls, and, besides the telephone toll, were required to pay messenger fees, when such fees and inconvenience could have been obviated had appellant transmitted such messages over the lines of appellee, and in accordance with its agreement. Such action on the part of appellant is not only in direct violation of its agreement with appellee, but an indefensible wrong to the public. It is apparent, however, that when the public receives the best, most convenient and least expensive service available, or when, as appears here, either of two lines is equal to the other in these respects, it becomes a matter of no concern to the public which agency is used for its service. Conceding that appellant, by reason of having permitted appellee to make a physical connection with its switchboard and having agreed to receive business therefrom, was compelled to permit the Commercial Telephone Company to make the same connection and receive its business, and conceding that as a common carrier it is its duty to transmit messages to points touched by both the appellee's lines and the Commercial company's lines and its connecting lines, it does not necessarily follow that such messages may not be transmitted over appellee's lines, when such agency is as convenient and efficient as the Commercial telephone system. Under such circumstances, we fail to

422 APPELLATE COURT OF INDIANA.

Home Tel. Co. *v.* North Manchester Tel. Co.—47 Ind. App. 411.

see wherein the public could be injuriously affected by such service. The public interest is in the character of the service, and not in the lines or routes over which it is rendered. The judgment in this case does not compel a severance of the connection between appellant and the Commercial Telephone Company; neither does it enjoin it from receiving all messages the Commercial Telephone Company may deliver to it; nor does it prohibit appellant from transmitting such messages to whomsoever directed. Certainly this is all the Commercial Telephone Company has a right to demand.

The contract in question, so far as it does not affect the public, is fair and within the power of the contracting parties to make, and thus far it can, and in all fairness should be, enforced. It is found by the court, and is undenied, that appellee, relying upon the contract, expended a large sum of money; that at the time it was entered into such a contract was deemed necessary to the existence of both parties, and to enable them to engage in competition with a wealthy and aggressive adversary. All these are cogent reasons, as we have seen, for upholding it, at least so far as it does not infringe upon the rights of the public.

The court found that the public could in all respects be as well served through the lines of appellee as through other lines, where the parties to be reached were as accessible through the one agency as the other. We cannot perceive where any consideration of public policy should require us to hold that the terms of the contract should be abrogated, to the manifest injury of one of the parties thereto.

The judgment of the court was that in such cases and under such circumstances appellant should conform to the terms of its agreement, and to this extent should be enjoined from violating it; but the court refused to enjoin appellant from using other agencies in violation of the strict letter of the agreement, when thereby the public interests could be best subserved. In this judgment we perceive no

error against appellant, and as appellee assigns none, we therefore do not decide whether the judgment under the facts found might have been made more comprehensive.

Judgment affirmed.

## ON PETITION FOR REHEARING.

HADLEY, P. J.—Appellant, in its brief for a rehearing, earnestly argues that the contract in question should be declared invalid, for the reason that by its terms appellee is given the right to fix tolls. It does not appear that it has exercised this right, or that the tolls on appellee's lines exceed those fixed on the lines of the Commercial Telephone Company or the Eel River Telephone Company, or that they are in any sense oppressive. On the contrary, the finding of the court is that the service of appellee to the public is in all respects equal to that of the Commercial Telephone Company and the Eel River Telephone Company. We should not go further than the contention of the parties. When it is shown that appellee is charging exorbitant or oppressive rates, it will be time enough to consider that question.

Petition for rehearing overruled.